# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

CARLEEN JENKINS, CINDY                )
SHAFFER, KIMBERLY COX, and            )
KARIS MYER,                           )
                                      )
            Plaintiffs,               )
                                      )     Case No. CIV-21-501-F
-vs-                                  )
                                      )
CACI, INC. – FEDERAL,                 )
                                      )
            Defendant.                )

## ORDER

Plaintiffs Carleen Jenkins (Jenkins), Cindy Shaffer, Kimberly Cox, and Karis Myer are former employees of defendant, CACI, Inc. – Federal (CACI). They allege claims against CACI for gender discrimination, hostile work environment based on gender and retaliation, under both federal and state law. They also allege a claim under federal law for failure to pay overtime wages. With leave of court, CACI has filed separate motions for summary judgment as to each individual plaintiff's claims. This order addresses CACI's motion with respect to Jenkins' claims.

Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. A genuine dispute of material fact exists "if a rational jury could find in favor of the nonmoving party on the evidence presented." Fassbender v. Correct Care Sols., LLC, 890 F.3d 875, 882 (10th Cir. 2018). In deciding CACI's motion, the court "view[s] the evidence in the light most

favorable to, and draw[s] all reasonable inferences in favor of, the nonmoving party." *Id*.

<u>Jenkins' Response Brief</u>

Jenkins' initial response brief to CACI's summary judgment motion was stricken by the court because of various deficiencies. *See*, doc. no. 136. Jenkins was directed to re-file her response correcting the deficiencies by August 30, 2023. *Id*. The court advised that if Jenkins failed to re-file by that date, the court may take action that is just, including dismissal without prejudice of Jenkins' action. *Id*.

In its reply brief, CACI points out that Jenkins' second response brief was filed on August 31, 2023. It also asserts that the response brief fails to remedy all the deficiencies specified by the court. As a result, CACI urges the court to exercise its inherent authority to control its docket and dismiss Jenkins' claims.

The court initially notes that Jenkins filed two response briefs of record on August 31, 2023, although one is designated as the response, and one is designated a sealed exhibit. *See*, doc. nos. 140 and 141. Each response brief attaches a different set of exhibits, exhibits that are not sealed, doc. no. 140, exhibits 1-6, 8 and 16, and exhibits that are sealed, doc. no. 141, exhibits 7, 9-15 and 17. The response briefs at doc. no. 140 and doc. no. 141 are the same document. As the court was given a courtesy copy of the response brief at doc. no. 141, with all exhibits attached, the court treats the response brief at doc. no. 141 as Jenkins' response brief.

Although Jenkins did not re-file her response brief by August 30, 2023, and the brief still contains deficiencies, the court declines to dismiss Jenkins' action. However, all facts which Jenkins disputes without citations to the record, Responses to Defendants Undisputed Material Facts (RDUMF) nos. 7-10, 13, 15-16, 42-43, 45, 49-53, 57-58, 60-61, 74, 77, 79, 81, are deemed admitted. *See*, Rule 56(e), Fed. R. Civ. P. ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes

of the motion[.]").    All facts which Jenkins disputes with citation to the record but the cited material is not in the record, RDUMF nos. 5, 23, and 34, are also deemed admitted. *Id.*

Relevant Factual Background

On July 9, 2018, Jenkins was employed by CACI to work in the Human Resources (HR) department at its Shared Services Center (SSC) in Oklahoma City. Jenkins' job title was HR Administration S3.  In her position, she was a part of, and lead for, the New Hire Administration (NHA) team, which was responsible for onboarding all new hires at CACI.  As part of her duties, Jenkins was a Day One Coordinator, providing support to new hires as they began their employment, and she also managed other Day One Coordinators.  She personally handled the onboarding process of confidential new hires, referred to as "white glove" new hires, and was the audit focal for the SSC.  Further, she was a member of the Tiger team, which was charged with revamping the onboarding process for all new CACI hires.

CACI had an electronic HR information system, called Workday, which was accessible through CACI's internet-based application.  The Workday system contained personal, sensitive, and confidential information about CACI employees. It was used by employees to update their own personal and resume information, benefits enrollment, manage their career, and search for positions within CACI.  It was used by CACI managers for recruiting, personnel transactions, performance management, and reporting.

To perform her job duties, Jenkins had elevated access to the information stored in the Workday system.  Jenkins was aware she was not to use her elevated Workday access privileges to access employee information for reasons other than legitimate business reasons.

During Jenkins' employment, Becky Estes (Estes), an HR manager, became her direct supervisor.  At some point, Estes asked Jenkins to provide the roles and

duties she performed in her position.  Thereafter, CACI created a new position, NHA-Assistant Manager, which was to report directly to Estes.  A job requisition (JR) for the new position was opened by Estes.  According to Jenkins, Estes told her the new position was hers.  Jenkins applied and was interviewed for the position by Estes.  However, Roman Chavez (Chavez), an external candidate, was offered the position on December 30, 2019.  Bryan Jester (Jester), Senior Vice President over the SSC, and plaintiff Cindy Shaffer (Shaffer), Senior HR manager, authorized or approved the offer to Chavez.  According to Jenkins, when Estes ultimately announced the decision to hire Chavez, she commented that she picked him because he was cute.

The day after the NHA-Assistant Manager position was offered but not yet accepted by Chavez, Jenkins sent an email to Estes, stating that "[a] team member came over and let me know that they saw a person they know was offered the manager job" and inquiring "what her new role [would be since] most of her current job functions will no longer be hers to manage." Doc. no. 118-14.  Shortly thereafter, Jenkins and another NHA employee, Leigh Jacobs (Jacobs), a male, were questioned by Estes, with Shaffer present, about whether they had looked at the JR in Workday regarding the hiring for the new position.  Both indicated they had looked at the JR, and a decision was made for each to be given a final written warning for looking at the JR for personal gain.

On January 16, 2020, Estes met with Jenkins, with Shaffer present in person, and with Jeana Plews (Plews), HR Director in CACI's corporate HR department, present by telephone.  Estes presented the final written warning to Jenkins to review and sign.  Upon request, Jenkins was allowed to take the document with her to further review it.  After the meeting, Jenkins sent an email to Plews to explain her side of the story.  She also spoke with Plews about the situation.  Subsequently, Estes and Jenkins met again, and according to Estes, Jenkins advised her that she was not the

one that had looked at the JR.  Instead of a final written warning, Estes prepared a written warning for Jenkins' signature.  The written warning was based on her covering for an employee (Jacobs) who misused his elevated Workday access for self-interest.  On February 18, 2020, Jenkins signed the written warning, but provided a written rebuttal for placement in the file, stating that she had not protected or concealed the employee's actions and that management acknowledged that looking at the JR is not in violation of any CACI policy or procedure.

Shortly thereafter, Jenkins was advised by her team members that her personnel file including the written warning was saved on a shared public drive. Jenkins complained to Estes, who apologized, and the personnel file was removed from the drive.  Senior HR manager, Holly Dailey (Dailey) (who had replaced Shaffer), told Jenkins they had "fixed it, it's all good, go get coffee and calm down." Doc. no. 118-11, ECF p. 35, ll. 18-19.

Chavez left his employment for another opportunity shortly after he was hired. Several months later, Tesa Jackson (Jackson) was hired as the NHA-Assistant Manager.

On June 8, 2020, an anonymous hotline complaint was received by CACI stating that (i) Dailey had "asked her friend [Jackson] to apply to another manager position within HR that will be directly under her," (ii) Jackson was "offered a sign on bonus," (iii) Jackson was "[n]ot in the position that was being hired for," and (iv) Dailey and Jackson had "[l]ied about knowing each other but they are friends on social networks."  Doc. no. 118-26.

Plews sent an email to Estes on June 17, 2020, advising of the hotline complaint, and stating that it appeared to be regarding the NHA-Assistant Manager position which was recently filled by Jackson.  Plews also spoke with Dailey about the complaint.  Dailey was one of Jenkins' supervisors.

5

It appeared to CACI leadership that the information in the hotline complaint would have been available only to an employee within HR with elevated access to Workday.  At Jester's request, Estes identified, in an email dated June 17, 2020, seven individuals within the NHA team who played a role in the onboarding process of Jackson.  Estes also identified information which would have been appropriate for each of the individuals to access in Workday to perform their job role.  One of seven individuals was Jenkins.  Estes also identified Jackson's recruiter as someone who would have had knowledge of the sign-on bonus, but Estes stated that the recruiter's last day was the next day, June 18, 2020.  Estes also advised that the hotline complaint "appears to have come in the day after the New Hire Assistant Manager was announced."  Doc. no. 118-29, ECF p. 2.

Jenya Golubeva (Golubeva), CACI's Workday consultant, was asked by CACI leadership to review the seven employees' Workday access.

On June 19, 2020, Jester, Dailey, and Estes discussed the initial data obtained by Golubeva and determined that there were team members who were reviewing information outside the scope of their work-related duties.  That same day, CACI requested Golubeva to prepare an audit report of all Workday keystroke activity available for all ten NHA team members, consisting of nine females and one male.  Information was available from Workday for a period of roughly 30 days.

In the morning of June 22, 2020, Golubeva circulated full audit trail reports for the team members, along with a summary of her review of the data contained in the reports.  A summary of the findings for each worker that identified areas of concern was also circulated.  Jenkins' report showed she had accessed in Workday personnel files for two co-workers and four supervisors (Jackson, Estes, Dailey, and Jester).

After Golubeva circulated her reports, Plews sent an email to Dailey and Estes asking that they provide the details for each of the persons CACI was terminating.

6

Five persons from the NHA team were identified—Jenkins, Jacobs, Sheila Vaughn (Vaughn), and plaintiffs Kimberly Cox (Cox) and Karis Myer (Myer).

Shortly thereafter, NHA team members, Jacobs, Vaughn, Cox, and Myer, attended individual meetings where they were questioned regarding inappropriate access to Workday information.   Jester, Estes, Dailey, and Heather Dolezal (Dolezal), an HR business partner in CACI's corporate HR department, attended the meeting for all employees but Jacobs.  Estes, Dailey, and Dolezal were present for the meeting with Jacobs.  Jacobs was terminated on June 22, 2020, and Vaughn, Cox, and Myer were terminated on June 23, 2020.  The four individuals did not receive any additional pay and they were deemed not eligible for rehire.

At the time of CACI's investigation, Jenkins was on vacation.  She was not expected to return until June 24, 2020.  On June 23, 2020, Estes directed that Jenkins' access to CACI's computer system be suspended/cutoff.  Later that evening, Jenkins sent an email to Estes, resigning her position because of another opportunity.  She gave her two-week notice, while also indicating that she had been exposed to COVID-19.

The next morning, Jenkins sent an email to Estes stating that she had received voicemails from co-workers on her work phone, and when she returned those calls, she was informed that she had been terminated by CACI.  Estes responded to the email, stating that she was unclear as to what Jenkins was referring to in her email. She stated that CACI accepted Jenkins' resignation, and it would pay her for the next two weeks.  Jenkins sent an email back to Estes, stating that her work account had been terminated on June 23, 2020, prior to her resignation email, and the voicemails had also been received prior to her resignation email.

As stated by Estes, CACI provided Jenkins with two weeks of pay, ending July 7, 2020, without requiring her to come into work.  CACI documented Jenkins

as eligible for rehire within its system.  Prior to Jenkins' resignation, none of her managers or supervisors had advised her that she was terminated.

The other five female NHA team members whose Workday access had been reviewed by CACI leadership were not interviewed or terminated.  CACI determined that they did not engage in egregious conduct based on the information accessed and their job roles at CACI.

Jenkins had been hired as an hourly non-exempt employee.  By the end of her employment, she was compensated at the regularly hourly rate of $20.43.  As an hourly non-exempt employee, Jenkins was eligible for overtime compensation for all hours worked over 40 in a workweek.  Jenkins was paid for all hours of work that she recorded, including all overtime hours recorded.  According to Jenkins, Estes required her to perform work outside of her regularly scheduled work hours, which was not recorded or compensated.  Jenkins did not keep any written records of the hours that she worked.

Discussion

Jenkins claims CACI discriminated against her based on her gender, subjected her to a hostile work environment based on her gender, and retaliated against her for engaging in protected activity.  The claims are brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., and the Oklahoma Anti-Discrimination Act (OADA), 25 O.S. § 1101, *et seq*.  Because "[t]he OADA is analyzed similarly to the Title VII claims," Jones v. Needham, 856 F.3d 1284, 1292 (10th Cir. 2017), the court's analysis of the Title VII claims applies equally to Jenkins' OADA claims.

In addition to the Title VII and OADA claims, Jenkins alleges an overtime wage claim under the Fair Labor Standards Act (FLSA) of 1938, 29 U.S.C. § 201, *et seq*.

CACI seeks summary judgment on each of Jenkins' claims.

Gender Discrimination

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex[.]" 42 U.S.C. § 2000e-2(a)(1). Jenkins claims she was discharged because of her sex. "A plaintiff proves a violation of Title VII either by direct evidence of discrimination or by following the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 [] (1973)." Khalik v. United Air Lines, 671 F.3d 1188, 1192 (10th Cir. 2012). In her papers, Jenkins maintains that her claim is based upon direct evidence of gender discrimination.

Direct Evidence

"Direct evidence demonstrates on its face that the employment decision was reached for discriminatory reasons." Ford v. Jackson National Life Insurance Company, 45 F.4th 1202, 1213 (10th Cir. 2022) (quotation marks and citation omitted). "But evidence is direct only if it proves the existence of a fact in issue without inference or presumption." Id. "[I]n the employment context, this type of evidence is usually impossible to obtain." Id.

"Generally, comments in the workplace that reflect personal bias do not qualify as direct evidence of discrimination unless the plaintiff shows the speaker had decisionmaking authority and acted on his or her discriminatory beliefs." Ford, 45 F.4th at 1213 (quotation marks, citation and alteration omitted). "And discriminatory statements do not qualify as direct evidence if the context or timing of the statements is not closely linked to the adverse decision." Id. at 1213-14.

As evidence of direct discrimination, Jenkins relies upon an anonymous hotline complaint relating to Jester and a payroll manager, John Loudermill (Loudermill). While Jenkins fails to include that complaint with her exhibits, CACI does not dispute its existence and refers the court to plaintiff Kimberly Cox's

exhibits which include the complaint.  Doc. no. 154, n. 5, citing doc. no. 142-1.[1]  The complaint, dated October 4, 2019, states that Jester and Loudermill have "bullied and degraded the women on staff" and have "insinuated to them that they 'find their place.'"  It also states that the "affected staff members are all fearful that if they speak up about their treatment they will be retaliated against and terminated."  Doc. no. 142-1, ECF p. 4.

Although Jester had decisionmaking authority over her, Jenkins has not presented any evidence that he acted on his alleged discriminatory beliefs.  As discussed below, Jenkins has failed to raise a genuine issue of material fact that she was terminated from employment.    Nonetheless, even if she were to proffer sufficient evidence to raise a genuine issue of material fact that she was terminated, there is no connection between the alleged comments/actions referenced in the complaint and the alleged termination.  As stated, the hotline complaint is dated October 4, 2019, and the alleged termination occurred on June 23, 2020.  There is "no temporal proximity" between the comments/actions and the termination.  *See*, Ford, 45 F.4th at 1214 (comments about a month before termination not sufficient to show temporal proximity).  Nor do the alleged comments/actions "demonstrate on their face" that Jester, if he indeed acted in terminating Jenkins, did so based on his animosity toward females.  *Id*. at 1213 (quotation marks, citation and alterations omitted).  The alleged comments/actions don't "directly reflect the forbidden animus needed for direct evidence of discrimination."  *Id*. at 1215 (quotation marks, citation and alteration omitted).

---

[1] The court notes that the complaint is at doc. no. 142-1, ECF pp. 4-5, rather than doc. no. 142-1, ECF pp. 11-13, as represented.

Because the court concludes Jenkins has not adduced direct evidence of discrimination, the court concludes that it should analyze her gender discrimination claim under the McDonnell Douglas framework.[2]

McDonnell Douglas Framework

"Under the McDonnell Douglas framework, a plaintiff must first raise a genuine issue of material fact on each element of the prima facie case, as modified to relate to differing fact situations." Bekkem v. Wilkie, 915 F.3d 1258, 1267 (10th Cir. 2019) (quotation marks and citation omitted). "The burden then shifts to the employer to offer a legitimate nondiscriminatory reason for its employment decision." Id. "If the employer does so, the burden then reverts to the plaintiff to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief." Id.

Generally, a prima facie case requires a plaintiff to show that (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the challenged action occurred under circumstances giving rise to an inference of discrimination. See, Bennett v. Windstream Communications, Inc., 792 F.3d 1261, 1266 (10th Cir. 2015).

Upon review, the court concludes that Jenkins has failed to proffer evidence sufficient to raise a genuine issue of material fact that she suffered an adverse employment action. To qualify as an adverse employment action, "the action must amount to a significant change in employment status, such as hiring, *firing*, failing to promote, reassignment with significantly different responsibilities, or . . . causing

---

[2] In her briefing, Jenkins relies solely on the purported direct evidence of gender discrimination to establish her gender discrimination claim. She makes no effect to analyze her claim using the McDonnell Douglas framework. CACI has advocated the use of the framework in analyzing Jenkins' claim. To determine whether summary judgment on the claim, as requested by CACI, is appropriate, the court proceeds with analyzing the claim under the McDonnell Douglas framework.

a significant change in benefits." Stover v. Martinez, 382 F.3d 1064, 1071 (10th Cir. 2004) (emphasis added).

Jenkins asserts she suffered an adverse employment action because she was terminated by CACI.  In support of her contention, she points to the June 22, 2020 email sent by Plews to Dailey and Estes requesting that they provide details for persons they are terminating and listing Jenkins as one of those persons, doc. no. 118-36, ECF p. 5.  She also points to the June 23, 2020 email by Estes directing that Jenkins' network access be suspended or cutoff, doc. no. 118-33, ECF p. 3, and CACI's General Separation Procedures stating the "Last Day of Work (Connectivity) will be the last day that the employee has network access," doc. no. 141-8, ECF p. 3.  However, the court concludes that this evidence, even when viewed in a light most favorable to Jenkins, is insufficient to raise a genuine issue of material fact that Jenkins was in fact terminated by CACI.  Jenkins has proffered no evidence to show that she was advised by any one of her supervisors that she was terminated. See, Hulsey v. Kmart, Inc., 43 F.3d 555, 557 (10th Cir. 1994) ("'Generally, an employee is notified of an adverse employment decision when a particular event or decision is announced by the employer.'") (quoting Gray v. Phillips Petroleum Co., 858 F.2d 610, 614 (10th Cir. 1988)).  Jenkins believed she had been terminated based on her discussions with her co-workers and an IT employee.  But, after receipt of Jenkins' email stating that she had been informed by her co-workers that she had been terminated, Estes responded that she was unclear as to what Jenkins was referring to and specifically advised Jenkins that CACI accepted her resignation and would pay her for the next two weeks.  CACI paid Jenkins for those two weeks, and the company also documented in its records that Jenkins was eligible for rehire. None of the other NHA employees terminated—Jacobs, Vaughn, Cox, and Myer— were paid or designated by CACI as eligible for rehire.

Even though an employee resigns, she may still satisfy the adverse employment action requirement by demonstrating she was constructively discharged. *See*, Rivero v. Board of Regents of University of New Mexico, 950 F.3d 754, 761 (10th Cir. 2020).  The court notes that Jenkins has not pleaded that she was constructively discharged.  Nonetheless, even if she had pleaded that sort of a claim, the court concludes that the record is insufficient to raise a genuine issue of material fact in support of a constructive discharge claim.

To establish a constructive discharge claim, Jenkins must show that she was discriminated against by her employer to the point where a reasonable person in her position would have felt compelled to resign and that she actually resigned.  Rivero, 950 F.3d at 761.  Essentially, Jenkins "must show that she *had no other choice* but to quit." *Id*.  (emphasis in original).  Jenkins has failed to proffer evidence adequate to raise a genuine issue of material fact that  the conditions of her employment were such that she had no other choice but to quit her employment.  The court consequently concludes that Jenkins cannot show an adverse employment action based on constructive discharge.

Along with not proffering evidence sufficient to raise a genuine issue of material fact that she suffered an adverse employment action, Jenkins has also failed to proffer evidence to raise a genuine issue of material fact that the challenged action, even if it were a termination instead of a resignation, occurred under circumstances giving rise to an inference of discrimination.  Jenkins can establish the third prong of the McDonnell Douglas framework in various ways, such as "[she] was qualified for [her] job . . . and [] the job was not eliminated after [her] discharge;" "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus," "preferential treatment given to employees outside the protected class," or "more generally, upon the timing or sequence of events leading to [her] termination." Singh v. Cordle, 936 F.3d 1022, 1037 (10th Cir. 2019) (quoting Kendrick v. Penske

Transp. Services, Inc., 220 F.3d 1220, 1229 (10th Cir. 2000)); Plotke v. White, 405 F.3d 1092, 1101 (10th Cir. 2005). Jenkins has failed to present evidence linking the challenged action to an inference of discrimination. In her briefing, Jenkins relies upon the hotline complaint that accused Jester of bullying and degrading women and insinuating that they should find their place, but Jenkins has failed to establish any nexus between those actions and the challenged employment action involving her.

Because Jenkins has failed to raise a genuine issue of material fact that she suffered an adverse employment action and that adverse employment action, if it happened as alleged, occurred under circumstances giving rise to an inference of discrimination. The court therefore concludes that Jenkins cannot establish a prima facie case of gender discrimination. Hence, the court concludes that CACI is entitled to summary judgment on the Title VII and OADA gender discrimination claims. See, Barlow v. C.R. England, Inc., 703 F.3d 497, 505 (10th Cir. 2012) ("If the plaintiff does not establish a prima facie case, [her] entire case fails.").

Retaliation

Title VII also makes it unlawful for an employer to retaliate against an employee "because she has opposed any practice made an unlawful employment practice by this subchapter." Khalik, 671 F.3d at 1192 (quotation marks, citation and alteration omitted). "A claim of Title VII retaliation can likewise be proven either by direct evidence or by reliance on the McDonnell Douglas framework." Bekkem, 915 F.3d at 1267. Jenkins does not point to any direct evidence of retaliation to support her claim. The court therefore concludes that it should analyze Jenkins' retaliation claim under the McDonnell Douglas framework.[3]

---

[3] Again, Jenkins makes no effect to analyze her retaliation claim using the McDonnell Douglas framework. CACI has advocated the use of the framework in analyzing the claim. To determine whether summary judgment on Jenkins' claim, as requested by CACI, is appropriate, the court proceeds with analyzing the retaliation claim under the McDonnell Douglas framework.

To state a prima facie case of retaliation, a plaintiff must show (1) she engaged in protected opposition to discrimination; (2) she suffered an adverse employment action; and (3) there exists a causal connection between the protected activity and the adverse action. Stover, 382 F.3d at 1071.

For the reasons previously discussed, the court concludes that Jenkins has failed to raise a genuine issue of material fact that she suffered an adverse employment action.

The court additionally concludes that Jenkins has failed to proffer evidence sufficient to raise a genuine issue of material fact that there exists a causal connection between the alleged protected activity and the alleged adverse action. To establish a causal connection, Jenkins must show that the individuals who took adverse action against her knew of her protected opposition. Zokari v. Gates, 561 F.3d 1076, 1081 (10th Cir. 2009). "The employer must know not only that the employee has opposed an action of the employer [], but that the opposition was based on a belief that the employer's action constituted discrimination prohibited by Title VII (here, [gender] discrimination)." Id. Jenkins relies upon her complaint to Plews after she found out that Estes had decided to issue her a final written warning for looking at the JR. However, there is nothing in that complaint (nor is there any other evidence) to show that Jenkins informed Plews that she believed Estes' actions were based on her protected status. Jenkins has failed to show that her complaint put Plews on notice that she was concerned about gender discrimination.

Because Jenkins has failed to proffer evidence sufficient to raise a genuine issue of material fact as to the adverse employment action and the causal connection elements, the court concludes that Jenkins cannot establish a prima facie case of

retaliation.[4]  The court therefore finds that CACI is entitled to summary judgment on Jenkins' Title VII and OADA retaliation claims.  *See*, Zokari, 561 F.3d at 1082 (affirming summary judgment on retaliation claim for failure to establish a prima facie case of retaliation).

Hostile Work Environment

In addition, "a plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." Delsa Brooke Sanderson v. Wyoming Highway Patrol, 976 F.3d 1164, 1174 (10th Cir. 2020) (quotation marks and citation omitted).  "A hostile work environment claim is composed of a series of separate acts that collectively constitute one unlawful employment practice."  Throupe v. University of Denver, 988 F.3d 1243, 1251 (10th Cir. 2021) (quotations marks and citation omitted).  To establish a hostile work environment claim, the plaintiff must show (1) she was discriminated against because of her sex, and (2) the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment.  Throupe, 988 F.3d at 1251.

To support her claim, Jenkins relies upon alleged harassing conduct of Estes, a female, who was her direct supervisor, and Jester, a male, who was the Senior Vice President of SSC.  Estes' conduct consisted of (i) hiring Chavez for the NHA-Assistant Manager position instead of Jenkins; (ii) issuing Jenkins the written

---

[4] Even if Plews was on notice that Jenkins was opposing gender discrimination when she complained to her about Estes' actions, the court concludes that Jenkins still cannot meet the causal connection element.  To establish causal connection, Jenkins may proffer "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."  Proctor v. United Parcel Service, 502 F.3d 1200, 1208 (10th Cir. 2007) (quotation marks and citation omitted).  Jenkins' complaint to Plews occurred more than four months before her resignation.  Under Tenth Circuit precedent, four months between a complaint and adverse action, by itself, is insufficient to support the causal connection element. *Id*. at 1208-09.  Additional evidence is required from Jenkins.  *Id*. at 1209.  However, Jenkins has not come forward with any such additional evidence.

warning; (iii) putting Jenkins' personnel file, including the written warning, on a shared drive; (iv) belittling Jenkins and stating she was not qualified in certain instances (number of times not identified); (v) screaming and hollering at Jenkins in Estes' office (number of times not identified); (vi) directing or telling the NHA team not to claim overtime pay (number of times not identified); (vii) becoming upset when employees and team members came to Jenkins instead of Estes with issues and concerns (number of times not identified); (viii) rude comments about plaintiff Kimberly Cox's hair color and then laughing; and (ix) aggressive behavior with plaintiff Karis Myer about the "Glebe Road" address issue and then stating to the NHA team, "You will do it or you will find a new job."  Doc. no. 118-11, ECF pp. 27-29.

CACI argues that there is an absence of evidence that Estes' alleged harassing conduct was based on Jenkins' gender.  In Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 79-80 (1998), the Supreme Court held that both opposite-sex and same-sex sexual harassment is actionable under Title VII, but that such harassment violates Title VII only when it is "because of sex."  "The term 'sex' under Title VII refers to class delineated by gender."  Dick v. Phone Directories Co., Inc., 397 F.3d 1256, 1263 (10th Cir. 2005) (citation omitted).  Thus, even for same-sex sexual harassment claims, "[if] the nature of an employee's environment, however unpleasant, is not due to her gender, she has not been the victim of sex discrimination as a result of that environment."  Id. (quotation marks and citation omitted).

The Supreme Court in Oncale established three ways a plaintiff can establish same-sex harassment:  (1) if the harasser was homosexual and motivated by sexual desire; (2) if the harassment was motivated by a general hostility to the presence of a particular gender in the workplace; and (3) if the harasser treated men and women differently in the workplace.  Oncale, 523 U.S. at 80-81.  Jenkins has failed to produce evidence to establish any of the three ways with respect to the alleged

harassing conduct of Estes, except for the selection of Chavez for the NHA-Assistant Manager position over Jenkins. Jenkins has presented evidence, viewed in her favor, that Estes hired Chavez to perform her duties and commented that she picked Chavez because he was cute.

The Tenth Circuit has indicated "[f]acially neutral abusive conduct can support a finding of gender animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly gender-discriminatory conduct." O'Shea v. Yellow Technology Services, Inc., 185 F.3d 1093, 1097 (10th Cir. 1999). Thus, when a plaintiff produces evidence of both gender-based harassment (the hiring of Chavez) and gender-neutral harassment (the other alleged harassing conduct), and when a jury, viewing the evidence in context, "reasonably could view *all* of the allegedly harassing conduct . . . as the product of sex and gender hostility," then "it is for the fact finder to decide whether such an inference should be drawn." *Id*. at 1102, 1097.

The court concludes that a rational jury, viewing all the evidence in context, could not reasonably find that the gender-neutral alleged harassment by Estes was the product of sex and gender hostility. Jenkins does not proffer evidence that the alleged treatment by Estes was based on her gender; that Estes was motivated by general hostility or that female, but not male, employees experienced this treatment. The court is unable to find that the gender-neutral alleged harassment could be considered by a rational jury as a product of sex or gender hostility.

As stated, Jenkins also relies on Jester's conduct to support her claim. This conduct consisted of (i) Jester not communicating with women on the teams; (ii) Jester wanting employees to dress more professionally and commenting on Jenkins' appearance as not professionally dressed and then pointing to a male as being professionally dressed; (iii) Jenkins' perception that Jester did not like women "with a backbone," (iv) Jester not holding the door open for Jenkins when CACI's Chief

Executive Officer was there; (v) Jester not shaking women's hands, and (vi) the hotline complaint in October 2019 that Jester bullied and degraded women and insinuated that they should find their place. Viewing the evidence and drawing all reasonable inferences in her favor, the court concludes that a rational jury could conclude that the alleged harassing conduct by Jester was based on gender.

"To prove severity or pervasiveness, a plaintiff must subjectively and objectively perceive the harassment." Ford, 45 F.4th at 1227. "This means the plaintiff must: (1) subjectively perceive 'the conduct to be severe or pervasive,' and (2) 'show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult.'" Id. (quoting Throupe, 988 F.3d at 1252). Severity and pervasiveness are analyzed by looking at the totality of the circumstances and considering "'such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Id. (quoting Morris v. City of Colo. Springs, 666 F.3d 654, 664 (10th Cir. 2012)). "A few isolated incidents of discriminatory conduct and run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces are insufficient to support a claim for hostile work environment." Id. (quotations marks and citations omitted). Whether the alleged harassing conduct was severe or pervasive is typically a question for the jury, but if the plaintiff fails to make this showing, summary judgment is appropriate. See, Throupe, 988 F.3d at 1252.

Viewing the evidence and drawing all reasonable inferences in a light most favorable to Jenkins, the court concludes that the alleged harassing conduct of Jester was neither severe nor pervasive. None of the identified conduct rises to the level of severity required for a hostile work environment claim. See, e.g., Morris, 666 F.3d at 667 (describing instances where the Tenth Circuit has found the severity

element met, including assault and the physical groping of body parts).  And the court concludes that no reasonable employee would have perceived Jester's and Estes' conduct, combined, as pervasive.  Further, the court concludes that no reasonable employee would have perceived Jester's conduct, along with Estes' conduct, as pervasive.

Although the court does not condone the alleged harassing conduct, "Title VII does not establish 'a general civility code.'"  Morris, 666 F.3d at 663 (quoting Oncale, 523 U.S. at 81.  Here, on the record before the court, viewed in Jenkins' favor, the court concludes that Jenkins has failed to proffer evidence sufficient to raise a genuine issue of material fact that her "workplace [was] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment."  Id. at 78.  Thus, the court concludes that CACI is entitled to summary judgment on Jenkins' hostile work environment claim.

Overtime Pay[5]

The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which [she] is employed."  29 U.S.C. § 207(a)(1).  "To succeed on an FLSA claim for unpaid overtime, the plaintiff has the burden of proving that [she] performed work for which [she] was not properly compensated."  Brown v. ScriptPro, LLC, 700 F.3d 1222, 1230 (10th Cir. 2012). Jenkins has the burden to produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  Id.  At summary

---

[5] In the amended complaint, Jenkins asserts that she seeks relief under the Oklahoma Minimum Wage Act (OMWA), 40 O.S. § 197.1, et seq.  However, none of the counts of the amended pleading seeks relief under the OMWA.  Count III only sets forth allegations of a violation of the FLSA.  The court concludes that Jenkins is not pursuing an overtime pay claim under the OMWA.

judgment, Jenkins must set forth specific facts showing that there is a genuine issue for trial." *Id.*

Upon review, the court finds that Jenkins has failed to proffer testimony and supporting evidence adequate to show the amount of overtime worked by a just and reasonable inference. Jenkins testified that she did not keep any written records of the overtime hours worked. Doc. no. 118-11, ECF p. 12, ll. 2-5. To support her claim, Jenkins testified in deposition that Estes would either call or text her outside of business hours to perform work. *Id.* at ECF p. 9, ll. 18-20; ECF p. 13, ll. 1-2. And with her response brief, Jenkins has attached, as an exhibit, texts received by Jenkins from Estes asking for something work-related outside of normal business hours. *See*, doc. no. 141-9. However, this evidence is insufficient to allow the court (or a rational jury) to reasonably infer the amount or the extent of hours Jenkins worked in excess of 40 hours in a workweek without proper compensation from CACI.

The court finds that Jenkins has failed to set forth specific facts showing that there is a genuine issue of material fact for trial with respect to her FLSA claim. Consequently, the court concludes that CACI is entitled to summary judgment on Jenkins' FLSA overtime pay claim.

Discovery

In her papers, Jenkins complains that she has been unable to state her case more forcibly due to CACI's unilateral constraints on discovery. Specifically, Jenkins asserts that she requested Skype messages, which CACI denied having, although examples of Skype messages exist in the summary judgment record. Additionally, Jenkins asserts that she received limited emails from CACI, because of its filtered keyword search, and the emails she did receive did not contain the entire email strings. Jenkins believes the missing emails would have supported her claims.

To the extent that Jenkins believed she did not have an opportunity to discover necessary evidence to support her claims, Rule 56(d), Fed. R. Civ. P., provided her a remedy.   Rule 56(d) authorizes the court to (1) defer considering a motion for summary judgment or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."   However, Jenkins has never invoked Rule 56(d).   And neither she nor her counsel has submitted any affidavit or declaration in compliance with Rule 56(d).   Thus, the court finds no justification for granting Jenkins any relief under Rule 56(d), including deferral or denial of CACI's summary judgment motion because of the referenced discovery issue.

<u>Conclusion</u>

For the reasons stated, CACI, Inc. – Federal's Motion for Summary Judgment as to Claims by Plaintiff Carleen Jenkins (doc. no. 116) is **GRANTED**.

DATED this 23rd day of October, 2023.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

21-0501p052.docx

22