## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CARLEEN JENKINS, CINDY SHAFFER, KIMBERLY COX, and KARIS MYER, | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| -vs- | ) ) |
| CACI, INC. – FEDERAL, | ) ) ) |
| Defendant. | ) |

Case No. CIV-21-501-F

## ORDER

Plaintiffs Carleen Jenkins, Cindy Shaffer, Kimberly Cox (Cox), and Karis Myer are former employees of defendant, CACI, Inc. – Federal (CACI).  They allege claims of gender discrimination, hostile work environment based on gender, retaliation, and failure to pay overtime wages, under both federal and state law.  With leave of court, CACI has filed separate motions for summary judgment as to each individual plaintiff's claims.  This order addresses CACI's motion as to the claims by Cox.

Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Rule 56(a), Fed. R. Civ. P.  A genuine dispute of material fact exists "if a rational jury could find in favor of the nonmoving party on the evidence presented."  Fassbender v. Correct Care Sols., LLC, 890 F.3d 875, 882 (10th Cir. 2018).  In deciding CACI's motion, the court "view[s] the evidence in the light most

favorable to, and draw[s] all reasonable inferences in favor of, the nonmoving party." *Id*.

Cox's Response Brief

Cox's initial response brief to CACI's summary judgment motion was stricken by the court because of various deficiencies. *See*, doc. no. 136. Cox was directed to re-file her response correcting the deficiencies by August 30, 2023. *Id*. The court advised that if Cox failed to re-file by that date, the court may take action that is just, including dismissal without prejudice of Cox's action. *Id*.

In its reply brief, CACI asserts that Cox's response brief fails to remedy all the deficiencies specified by the court. As a result, CACI urges the court to exercise its inherent authority to control its docket and dismiss Cox's action.

The court initially notes that Cox filed two response briefs of record although one is designated as the response brief, filed August 30, 2023, and one is designated a sealed exhibit, filed August 31, 2023. *See*, doc. nos. 139 and 142. Each response brief attaches a different set of exhibits, exhibits that are not sealed, doc. no. 139, exhibits 1-2, 5-10, 12-17, and 19-21, and exhibits that are sealed, doc. no. 142, exhibits 3, 4 and 11. The response briefs at doc. no. 139 and doc. no. 142 are the same document. As the court was given a courtesy copy of the response brief at doc. no. 139, with all exhibits attached, the court treats the response brief at doc. no. 139 as Cox's response brief.

Although Cox's response brief still contains deficiencies, the court declines to dismiss Cox's action. However, all facts which Cox disputes without citations to the record, Responses to Defendants Undisputed Material Facts (RDUMF) nos. 20, 23, 24, 34, 41, 45, 52, 53, 56, 59, 60, 62, 65, 66, and 76, are deemed admitted. *See*, Rule 56(e), Fed. R. Civ. P. ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]"). All facts which Cox disputes with

citation to the record but for which the cited material is not in the record, RDUMF nos. 4, 18, and 26, are also deemed admitted. *Id.*

Factual Background

On July 23, 2018, Cox was employed by CACI to work in the Human Resources (HR) department at its Shared Services Center in Oklahoma City. Cox's position was HR Administration S2. In that position, she was a part of the New Hire Administration (NHA) team providing Tier-2 employee services, supporting new hires, onboarding administration, processes related to background checks, internet background checks, I-9, E-Verify, and other related activities.

CACI had an electronic HR information system, called Workday, accessible through CACI's internet-based application. The Workday system contained personal, sensitive, and confidential information relating to CACI employees. It was used by employees to update their own personal and resume information, benefits enrollment, manage their career, and search for positions within CACI. It was used by CACI managers for recruiting, personnel transactions, performance management, and reporting.

To perform her duties, Cox had elevated access to Workday. Cox was aware she was not to use her elevated Workday access privileges to access employee information for reasons other than legitimate business reasons.

On January 17, 2020, Cox raised concerns to Larry Murray (Murray), Senior HR Business Partner in CACI's corporate HR department, about her job responsibilities, the amount she was being paid for all the work she was doing, and the conduct of her direct supervisor, Becky Estes (Estes). She also spoke to Jenna Plews (Plews), HR Director in CACI's corporate HR department, about the issues. Regarding Estes' conduct, Cox complained of a lack of professionalism, lack of communication with the NHA team, unfair treatment/showing favoritism, unapproachable personality, taking credit for others' work, passing Cox over for at

least two positions she felt she was qualified for, and in one of those positions, hiring an external candidate, and not treating her fairly in terms of compensation.

On the issue of pay, Cox complained that she only received a 2.98% merit pay increase, even though she supported one of the largest client groups. She also complained that she was taking on more and more responsibilities that were not part of her job description, but she was not being compensated for those additional responsibilities.

On June 8, 2020, an anonymous hotline complaint was received by CACI stating that (i) Senior HR manager, Holly Dailey (Dailey), had "asked her friend [Tesa Jackson (Jackson)] to apply to another manager position within HR that will be directly under her," (ii) Jackson was "offered sign on bonus," (iii) Jackson was "[n]ot in the position that was being hired for," and (iv) Dailey and Jackson had "[l]ied about knowing each other but they are friends on social networks." Doc. no. 121-7.

Plews sent an email to Estes on June 17, 2020, advising of receipt of the hotline complaint and that it appeared to be regarding the NHA-Assistant Manager position which was recently filled by Jackson. Plews also spoke with Dailey about it. Dailey was Cox's second level supervisor.

It appeared to CACI leadership that the information in the hotline complaint would only have been available to an employee within HR with elevated access to Workday. At the request of Bryan Jester (Jester), Senior Vice President of the SSC, Estes identified, in an email dated June 17, 2020, seven individuals within the NHA team who played a role in the onboarding process of Jackson. Estes also identified information which would have been appropriate for each of the individuals to access in Workday to perform their job role. One of the seven individuals was Cox. Estes also identified Jackson's recruiter as someone who would have had knowledge of

the sign-on bonus, but Estes stated the recruiter's last day was the next day, June 18, 2020.

Jenya Golubeva (Golubeva), CACI's Workday consultant, was asked by CACI to review the seven employees' Workday access.

On June 19, 2020, Jester, Dailey, Estes, and Plews discussed the initial review conducted by Golubeva and determined that there were team members who were reviewing information outside the scope of their work-related duties. That same day, CACI requested Golubeva to prepare an audit report of the Workday keystroke activity for all ten NHA team members, consisting of nine females and one male. Information was available from Workday for a period of roughly 30 days.

In the morning of June 22, 2020, Golubeva circulated full audit trail reports for the team members, along with a summary of her review of the data contained in the reports. A summary of the findings for each worker that identified areas of concern was also circulated. Cox's report showed she accessed in Workday confidential information relating to her co-workers and supervisors.

Cox's access included looking at Dailey's compensation, bonus, job history, emergency contacts, beneficiary, legal name change, social security number, and beneficiary data, as well as Estes' compensation and bonus information. She also reviewed Touchpoints (quarterly employee evaluations) for Estes, and at least ten co-workers, including Heather Dolezal (Dolezal), an HR Business Partner for the SSC.

Shortly thereafter, CACI leadership met with Cox where she was questioned concerning inappropriate access to Workday information. Specifically, Jester, Estes, Dailey, and Dolezal attended the meeting. The meeting was secretly recorded by Cox.

After the meeting, Jester, Dailey, and Estes collectively made the decision to terminate Cox. Brian Churchey, Vice President of Workplace Relations, Dolezal,

and Plews participated in those conversations and agreed with the decision to terminate Cox.  All believed that Cox had been accessing personnel information in Workday without a legitimate business purpose.

On June 23, 2020, Estes and Dailey issued a Notice of Termination to Cox, informing her that she was terminated for unprofessional behavior in violation of CACI's Standards of Ethics and Business Conduct.  The Standards prohibit employees from using confidential or proprietary information in an unauthorized manner.  They also required that CACI assets be used for legitimate business purposes.  CACI considered its personnel files to be confidential information that may only be accessed or used for a legitimate business purpose.

Three other NHA team members were terminated as a part of the same investigation—plaintiff Karis Myer (female), Sheila Vaughn (female), and Leigh Jacobs (male).  Plaintiff Carleen Jenkins, who was on vacation at the time, resigned her employment prior to her return to work.

The other five female NHA team members whose Workday access had been reviewed by CACI leadership were not interviewed or terminated.  CACI leadership determined that they did not engage in egregious conduct based on the information accessed and their job roles at CACI.

Prior to her termination, Cox had filed anonymously two hotline complaints regarding merit pay increases and an anonymous hotline complaint concerning the NHA-Assistant Manager position.  None of the individuals involved in the termination decision knew that Cox had filed the hotline complaints.

At the time of her termination, the concerns Cox had raised to Murray had not been resolved.  The matter had been discussed between Murray and Plews, and Murray had referred the matter to Dolezal for handling.

Cox had been hired as an hourly non-exempt employee.  By the end of her employment, she was compensated at the regularly hour rate of $15.54.  As an hourly

non-exempt employee, Cox was eligible for overtime compensation for all hours worked over 40 hours in a workweek. Cox was paid for all hours of work recorded, including for all overtime hours recorded. Cox claims that she worked hours in excess of 40 hours that were not compensated.

<u>Discussion</u>

Cox claims CACI discriminated against her based on her gender, subjected her to a hostile work environment based on her gender, and retaliated against her for engaging in protected activity. The claims are brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., and the Oklahoma Anti-Discrimination Act (OADA), 25 O.S. § 1101, *et seq*. Because "[t]he OADA is analyzed similarly to the Title VII claims," <u>Jones v. Needham</u>, 856 F.3d 1284, 1292 (10th Cir. 2017), the court's analysis of the Title VII claims applies equally to Cox's OADA claims.

In addition to the Title VII and OADA claims, Cox alleges an overtime wage claim under the Fair Labor Standards Act (FLSA) of 1938, 29 U.S.C. § 201, *et seq*.

CACI seeks summary judgment on each of Cox's claims.

<u>Gender Discrimination</u>

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex[.]" 42 U.S.C. § 2000e-2(a)(1). Cox claims she was discharged because of her sex. "A plaintiff proves a violation of Title VII either by direct evidence of discrimination or by following the burden-shifting framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 [] (1973)." <u>Khalik v. United Air Lines</u>, 671 F.3d 1188, 1192 (10th Cir. 2012). In briefing, Cox maintains that her claim is based upon direct evidence of gender discrimination.

Direct Evidence

"Direct evidence demonstrates on its face that the employment decision was reached for discriminatory reasons." Ford v. Jackson National Life Insurance Company, 45 F.4th 1202, 1213 (10th Cir. 2022) (quotation marks and citation omitted). "But evidence is direct only if it proves the existence of a fact in issue without inference or presumption." *Id*. "[I]n the employment context, this type of evidence is usually impossible to obtain." *Id*.

"Generally, comments in the workplace that reflect personal bias do not qualify as direct evidence of discrimination unless the plaintiff shows the speaker had decisionmaking authority and acted on his or her discriminatory beliefs." Ford, 45 F.4th at 1213 (quotation marks, citation and alteration omitted). "And discriminatory statements do not qualify as direct evidence if the context or timing of the statements is not closely linked to the adverse decision." *Id*. at 1213-14.

As evidence of direct discrimination, Cox relies upon an anonymous hotline complaint relating to Jester and a payroll manager, John Loudermill (Loudermill). Doc. no. 142-1, ECF p. 4. The complaint, dated October 4, 2019, states that Jester and Loudermill have "bullied and degraded the women on staff" and have "insinuated to them that they 'find their place.'" It also states that the "affected staff members are all fearful that if they speak up about their treatment they will be retaliated against and terminated." *Id*.

Although Jester had decisionmaking authority over her, Cox has not presented any evidence that he acted on his alleged discriminatory beliefs. There is no connection between the alleged comments/actions referenced in the complaint and Cox's termination. As stated, the hotline complaint is dated October 4, 2019, and Cox's termination occurred on June 23, 2020. There is "no temporal proximity" between the comments/actions and the termination. *See*, Ford, 45 F.4th at 1214 (comments about a month before termination not sufficient to show temporal

8

proximity).  Nor do the alleged comments/actions "demonstrate on their face" that Jester, in terminating Cox, did so based on his animosity toward females.  *Id*. at 1213 (quotation marks, citation and alterations omitted).  The alleged comments/actions don't "directly reflect the forbidden animus needed for direct evidence of discrimination."  *Id*. at 1215 (quotation marks, citation and alteration omitted).

Because the court concludes Cox has not adduced direct evidence of discrimination, the court concludes that it should analyze her gender discrimination claim under the McDonnell Douglas framework.[1]

McDonnell Douglas Framework

"Under the McDonnell Douglas framework, a plaintiff must first raise a genuine issue of material fact on each element of the prima facie case, as modified to relate to differing fact situations."  Bekkem v. Wilkie, 915 F.3d 1258, 1267 (10th Cir. 2019) (quotation marks and citation omitted).  "The burden then shifts to the employer to offer a legitimate nondiscriminatory reason for its employment decision."  *Id*.  "If the employer does so, the burden then reverts to the plaintiff to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief."  *Id*.

Generally, a prima facie case requires a plaintiff to show that (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the challenged action occurred under circumstances giving rise to an inference of discrimination.  *See*, Bennett v. Windstream Communications, Inc., 792 F.3d 1261,

---

[1] In briefing, Cox relies solely on the purported direct evidence of gender discrimination to establish her gender discrimination claim.  She makes no effort to analyze her claim using the McDonnell Douglas framework. CACI has advocated the use of the framework in analyzing Cox's claim.  To determine whether summary judgment on the claim, as requested by CACI, is appropriate, the court proceeds with analyzing the claim under the McDonnell Douglas framework.

1266 (10th Cir. 2015).  There is no dispute that Cox can show that she is a member of a protected class—female, and she suffered an adverse employment action—termination.  Instead, CACI challenges whether Cox can show that her termination occurred under circumstances giving rise to an inference of discrimination.

Cox can establish the third prong of the <u>McDonnell Douglas</u> framework in various ways, such as "[she] was qualified for [her] job . . . and [] the job was not eliminated after [her] discharge," "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus," "preferential treatment given to employees outside the protected class," or "more generally, upon the timing or sequence of events leading to [her] termination." <u>Singh v. Cordle</u>, 936 F.3d 1022, 1037 (10th Cir. 2019) (quoting <u>Kendrick v. Penske Transp. Services, Inc.</u>, 220 F.3d 1220, 1229 (10th Cir. 2000)); <u>Plotke v. White</u>, 405 F.3d 1092, 1101 (10th Cir. 2005).

In briefing, Cox relies solely on the hotline complaint that accused Jester of bullying and degrading women and insinuating that they should find their place. Cox, however, has failed to establish any nexus between Jester's alleged comments/actions and her termination. Although not argued by Cox, the court notes the record contains evidence sufficient to reasonably infer that she was qualified for the position of HR Administration S2, *see*, doc. no. 139-1, ECF p. 6; doc. no. 139-2, ECF p. 7, ¶ 33; doc. no. 139-9, ECF p. 6, ll. 14-16; doc. no. 139-13, ECF pp. 12-13; and doc. no. 121-34, ECF p. 1,[2] and it also contains evidence sufficient to reasonably infer that the HR Administration S2 position was not eliminated.  *See*, doc. no. 121-14, ECF p. 5.

The court concludes that CACI has proffered a legitimate nondiscriminatory reason for Cox's termination—that she was terminated for unprofessional behavior

---

[2] "The relevant inquiry at the prima facie stage is . . . whether the employee has introduced some evidence that she possesses the objective qualifications necessary to perform the job . . . ." <u>EEOC v. Horizon/CMS Healthcare Corp.</u>, 220 F.3d 1184, 1193 (10th Cir. 2000) (emphasis omitted).

in violation of CACI's Standards of Ethics and Business Conduct.  *See*, doc. no. 121-25.  CACI's Standards prohibit employees from using confidential or proprietary information in an unauthorized manner and require that CACI assets be used for legitimate business purposes.  *See*, doc. no. 121-30, ECF pp. 3-4.  The court therefore turns to the third prong of the <u>McDonnell Douglas</u> framework—whether CACI's proffered reason for Cox's termination is pretextual or unworthy of belief.  Upon review, the court finds that Cox has failed to raise a genuine issue of material fact that the proffered reason is pretextual or unworthy of belief.

"A plaintiff may show pretext by demonstrating the 'proffered reason is factually false,' or that 'discrimination was a primary factor in the employer's decision.'" <u>DePaula v. Easter Seals El Mirador</u>, 859 F.3d 957, 970 (10th Cir. 2017) (quoting <u>Tabor v. Hilti, Inc.</u>, 703 F.3d 1206, 1218 (10th Cir. 2013)).  A plaintiff may accomplish this "by revealing weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered reason, such that a reasonable fact finder could deem the employer's reason unworthy of credence." *Id*.  "'In determining whether the proffered reason for a decision was pretextual, [the court examines] the facts as they appear *to the person making the decision,*' and '[does] not look to the plaintiff's subjective evaluation of the situation.'" *Id*. at 971 (quoting <u>EEOC v. C.R. Eng., Inc.</u>, 644 F.3d 1028, 1044 (10th Cir. 2011)) (emphasis in original).  "Instead of asking whether the employer's reasons 'were wise, fair or correct,' the relevant inquiry is whether the employer 'honestly believed those reasons and acted in good faith upon those beliefs.'" *Id*. (quoting <u>Swackhammer v. Sprint/United Mgmt. Co.</u>, 493 F.3d 1160, 1170 (10th Cir. 2007)).

In briefing, Cox suggests that CACI's proffered reason for her termination is factually false because her use of Workday to access confidential information about CACI employees was for a legitimate business purpose.  However, when questioned by Jester whether she looked at an employee's compensation when she had no reason

to be accessing it, she said, "I might have.  I don't know[;]" "I could . . . have Br[y]an[;]" and "I might have. Honestly, I might have."  *See*, doc. no. 121-20, deposition p. 12, ll. 17-18; deposition p. 13, ll. 3-6; and deposition p. 14, ll. 5-6.  And while she asserts that she had a legitimate business purpose for accessing employees' evaluations in Touchpoints, *i.e.*, to obtain employee feedback for a project she was working on for Estes, Cox accessed those evaluations without any direction from Estes.  *See*, doc. no. 121-31, ECF p. 7, ll. 17-24.  The fact that Estes would "always" tell Cox "to dig down deep into the system," *id.*, ECF p. 5, ll. 8, does not support a finding that Estes authorized Cox to access employees' evaluations from Touchpoints to complete the subject project.  Cox also proffers no evidence that Estes was aware that she was accessing Touchpoints to perform the work Estes requested of her.  Further, Cox proffers no evidence that anyone asked her to access in Workday the account of Dailey, her second-level supervisor, after Dailey indicated that there was an issue with it.  *Id.*, ECF p. 3, ll. 17-25, ECF p. 4, ll. 1-6.

  "[A] challenge of pretext requires [the court] to look at the facts as they appear to the person making the decision to terminate plaintiff."  Kendrick, 220 F.3d at 1231.  Here, the record indicates that CACI leadership, including Estes, Cox's direct supervisor, and Dailey, Cox's second level supervisor, determined that Cox accessed confidential information of CACI employees without a legitimate business purpose.  There is nothing in the record that suggests CACI's leadership did not honestly believe in its reasons for terminating Cox or that it did not act in good faith upon those beliefs.

In briefing, Cox asserts that other NHA employees accessed co-workers and supervisors' confidential information in Workday and were not terminated by CACI. A plaintiff may show pretext on a theory of disparate treatment by "evidence that [she] was treated differently from other similarly-situated, nonprotected employees who violated work rules of comparable seriousness."  Kendrick, at 1232.  But Cox

has not shown that the other employees who accessed the information were nonprotected employees.  The other five employees, who were investigated but not terminated, were all female.

Cox additionally points out that there were other hotline complaints, filed in August and December of 2019, which CACI leadership concluded contained confidential information that was obtained by someone with elevated access to Workday, but no audit of NHA team members was then conducted by CACI. However, the record reveals, as to the August complaint, that HR corporate recommended no investigation but rather counseling of employees on the responsibility of having access to sensitive data such as salary information, and this was done by CACI leadership.  *See*, doc. no. 142-1, ECF p. 3.  As to two December complaints, no audit was necessary because Estes was already investigating the issue, and she knew the two employees involved in accessing the confidential information, and those employees were disciplined by the issuance of written warnings.  *See*, doc. no. 142-1, ECF p. 24.  After the investigation relating to the June 2020 complaint was performed, HR corporate employees agreed with CACI leadership's decision to terminate Cox.  The court concludes that the fact that the August and December 2019 hotline complaints did not result in an audit of the NHA team members' Workday access does not raise a genuine issue of material fact that the proffered reason for Cox's termination is unworthy of credence.

In addition, Cox contends that other SSC employees had elevated access to the Workday system, but they were not audited by CACI leadership. Notwithstanding that other SSC employees may have had elevated access to Workday, Cox does not proffer sufficient evidence to undermine CACI leadership's reason for limiting its investigation to the NHA team members—that it appeared the knowledge of confidential information regarding Jackson likely originated from the NHA department where her hire had been announced the day before the hotline

complaint was filed.  Cox proffers no evidence to show that the other SSC employees with elevated access would also have been aware of Jackson's hire.  Although Jackson's recruiter would have also had information relating to the sign-on bonus and was not audited, the record indicates that the recruiter's last day of work was on June 18, 2020.  *See*, doc. no. 121-11, ECF p. 2.  As such, there was no need to audit the recruiter, along with the NHA team members.  The court concludes that the failure of the CACI leadership to audit other SSC employees or Jackson's recruiter does not raise a genuine issue of material fact that the proffered reason for her termination is pretextual.[3]

Further, Cox maintains that Golubeva, in conducting the audit of Workday access activity, was only provided criteria by CACI leadership consisting of the NHA team members' names and a date range to search.  Cox asserts that Golubeva did not know what jobs the NHA team members performed and was not qualified to determine what they should or should not have been reviewing in Workday.  But Cox does not dispute that CACI leadership independently reviewed the data that was provided by Golubeva and, from that review, determined that Cox and other NHA team members accessed confidential information relating to co-workers and supervisors.

Lastly, Cox asserts that the way the Workday system was set up (in terms of ability to access confidential information) was determined by CACI, and if CACI leadership did not want NHA team members to access the confidential information, including compensation, bonuses and Touchpoints, it could have placed "hard stops" in the system to prevent the NHA employees from accessing such information.  *See*,

---

[3] In briefing, Cox asserts that the same confidential information in Workday was also available in the SharePoint file.  However, Cox has not demonstrated that anyone other than Estes and the NHA team members had access to that file.  The court concludes that the existence of the SharePoint file does not raise a genuine issue of material fact that CACI's proffered reason for her termination is pretextual.

doc. no. 139, ECF p. 6.    However, while CACI, at the relevant time, did not have "hard stops" placed in the Workday system to prevent the NHA team members, like Cox, from accessing confidential information, Cox acknowledged that she knew she was not supposed to access confidential information in Workday without a legitimate business purpose.

Upon review of the record, the court concludes that Cox has failed to proffer evidence sufficient to raise a genuine issue of material fact that CACI's proffered legitimate nondiscriminatory reason for its termination decision is pretextual or unworthy of belief for gender discrimination.    The court therefore concludes that CACI is entitled to summary judgment on Cox's Title VII and OADA gender discrimination claims.    *See*, DePaula, 859 F.3d at 977-978 (affirming summary judgment because plaintiff failed to show that there was a genuine dispute of material fact as to whether the employer's reasons for termination were pretextual or unworthy of belief).

Retaliation

Title VII also makes it unlawful for an employer to retaliate against an employee "because she has opposed any practice made an unlawful employment practice by this subchapter."    Khalik, 671 F.3d at 1192 (quotation marks, citation and alteration omitted). "A claim of Title VII retaliation can likewise be proven either by direct evidence or by reliance on the McDonnell Douglas framework." Bekkem, 915 F.3d at 1267.  Cox does not point to any direct evidence of retaliation to support her claim.   The court therefore concludes that it should analyze Cox's retaliation claim under the McDonnell Douglas framework.[4]

---

[4] Again, Cox makes no effort to analyze her retaliation claim using the McDonnell Douglas framework.  CACI has advocated the use of the framework in analyzing the claim.  To determine whether summary judgment on Cox's claim, as requested by CACI, is appropriate, the court proceeds with analyzing the retaliation claim under the McDonnell Douglas framework.

To state a prima facie case of retaliation, a plaintiff must show (1) she engaged in protected opposition to discrimination; (2) she suffered an adverse employment action; and (3) there exists a causal connection between the protected activity and the adverse action.  *See*, <u>Stover v. Martinez</u>, 382 F.3d 1064, 1071 (10th Cir. 2004).

Upon review, the court concludes that Cox has failed to proffer evidence sufficient to raise a genuine issue of material fact that there exists a causal connection between the alleged protected activity and the alleged adverse action.  To establish a causal connection, Cox must show that the individuals who took adverse action against her knew of her protected opposition.  <u>Zokari v. Gates</u>, 561 F.3d 1076, 1081 (10th Cir. 2009).  "The employer must know not only that the employee has opposed an action of the employer [], but that the opposition was based on a belief that the employer's action constituted discrimination prohibited by Title VII (here, [gender] discrimination)."  *Id*.  Cox testified that she raised concerns to Murray and Plews related to her job responsibilities, the amount of her pay for all the work she performed, and Estes' conduct.  *See*, doc. no. 121-34, ECF pp. 1-2; doc. no. 121-31, ECF p. 35, ll. 18-23.  However, there is nothing in Cox's supporting evidence to show that Cox informed Murray or Plews that she believed any of the conduct described to them was based on or due to her gender.  Cox has failed to show that her complaint to Murray and Plews put them on notice that she was concerned about gender discrimination.

Because Cox has failed to proffer evidence sufficient to raise a genuine issue of material fact as to the causal connection element, the court concludes that Cox cannot establish a prima facie case of retaliation.  The court therefore finds that CACI is entitled to summary judgment on Cox's Title VII and OADA retaliation

claims.  *See*, Zokari, 561 F.3d at 1082 (affirming summary judgment on retaliation claim for failure to establish a prima facie case of retaliation).[5]

Hostile Work Environment

In addition, "a plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." Delsa Brooke Sanderson v. Wyoming Highway Patrol, 976 F.3d 1164, 1174 (10th Cir. 2020) (quotation marks and citation omitted).  "A hostile work environment claim is composed of a series of separate acts that collectively constitute one unlawful employment practice."  Throupe v. University of Denver, 988 F.3d 1243, 1251 (10th Cir. 2021) (quotations marks and citation omitted).  To establish a hostile work environment claim, the plaintiff must show (1) she was discriminated against because of her sex, and (2) the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment.  Throupe, 988 F.3d at 1251.

To support her claim, Cox relies, in part, upon the alleged harassing conduct of Estes and a male recruiter.  Estes' conduct consisted of (i) the NHA team (consisting of females and a male) feeling confined to their chairs because Estes would say to them, "[g]et your butts in the seat.  If your butt's not in the seat Bryan is going to be upset.  We get paid for our butts being in the seats;" (ii) telling Cox in her initial interview with Estes and Tiffany Issenock that she couldn't be on her team and Estes couldn't use her; (iii) making fun of Cox's hair color; (iv) telling Cox she

---

[5] Even if Cox presented evidence sufficient to raise a genuine issue of material fact as to each of the elements of a prima case of retaliation, including causal connection, the court concludes that Cox could not establish that CACI's proffered reason to terminate her is pretextual or unworthy of belief for the reasons previously discussed with respect to her gender discrimination claim.  Hiatt v. Colorado Seminary, 858 F.3d 1307, 1323 (10th Cir. 2017) (affirming summary judgment on retaliation claim for failure to create triable issue that employer's reasons for any adverse employment actions were pretextual for retaliation).

is "not a marketing person," when presenting to Estes the company culture book she had revised, even though it was Estes' responsibility, and then Estes pushing the book back at her; and (v) hiring Chavez for the NHA-Assistant Manager position when there were equally qualified individuals available. *See*, doc. no. 121-31, ECF p. 11, ll. 8-13, 15-16; ECF p. 13, ll. 22-25; ECF p. 14, ll. 1-6, ECF p. 17, ll. 14-16.

The male recruiter's conduct consisted of sending an extremely hateful Skype message or an email to Cox, wherein he pushed back on the process of how they were onboarding new hires and he wanted special treatment for his recruits, and after she complained to Estes, the recruiter would not respond to her emails regarding the onboarding of his recruits. *See*, doc. no. 121-31, ECF p. 20, ll. 11-25, ECF p. 21, ll. 1-5.

CACI argues that there is an absence of evidence that the conduct experienced by Cox was based on her gender.  In Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 79-80 (1998), the Supreme Court held that both opposite-sex and same-sex sexual harassment is actionable under Title VII, but that such harassment violates Title VII only when it is "because of sex."  "The term 'sex' under Title VII refers to class delineated by gender."  Dick v. Phone Directories Co., Inc., 397 F.3d 1256, 1263 (10th Cir. 2005) (citation omitted).  Thus, even for same-sex sexual harassment claims, "[if] the nature of an employee's environment, however unpleasant, is not due to her gender, she has not been the victim of sex discrimination as a result of that environment." *Id.* (quotation marks and citation omitted).

The Supreme Court in Oncale established three ways a plaintiff can establish same-sex harassment: (1) if the harasser was homosexual and motivated by sexual desire; (2) if the harassment was motivated by a general hostility to the presence of a particular gender in the workplace; and (3) if the harasser treated men and women differently in the workplace.  Oncale, 523 U.S. at 80-81.

Upon review, the court concludes that Cox has failed to produce evidence to establish any of the three ways with respect to the alleged harassing conduct of Estes. The court concludes that Cox has failed to show she was discriminated against by Estes because of her gender.  The court additionally finds that Cox has failed to produce evidence to show that the male recruiter discriminated against her because of her gender.

Cox also relies upon the alleged harassing conduct of Jester to support her hostile work environment claim.  Jester's conduct consisted of (i) ignoring Cox in the hallway, even though she said, "Hi, Bryan;" (ii) not coming in to say "hi and check in on" the NHA team; (iii) allowing a door to slam in women's faces, instead of holding the door open for them; (iv) causing a woman with over ten years of experience on the security team to be visibly upset when a younger male with less than six months experience was selected for an open position; (v) causing a woman who worked directly under him to cry about the way he treated her; (vi) being told by International employee, Dawn Mogan, that Jester had pointed his finger in her face; (vii) causing plaintiff Cindy Shaffer, her second level supervisor at the time, to cry on more than one occasion after Jester met with her in her office; and (viii) Jester's treatment of Cox in the meeting before her termination by interrupting her, talking down to her and making her feel awful.  *See*, doc. no. 121-31, ECF p. 9, ll. 13-21; ECF p. 10, ll. 9-12; ECF p. 12, ll. 17-23; ECF p. 18, ll. 1-8, 17-22, ECF p. 19, ll. 14-19; ECF p. 24, ll. 3-7; ECF p. 28, ll. 11-13.

Viewing the evidence and drawing all reasonable inferences in Cox's favor, the court concludes that a rational jury could conclude that Jester's alleged harassing conduct, except for saying "hi" or "check[ing] in on" the NHA team, which consisted of females and a male, was based on gender.

The Tenth Circuit has indicated "[f]acially neutral abusive conduct can support a finding of gender animus sufficient to sustain a hostile work environment

claim when that conduct is viewed in the context of other, overtly gender-discriminatory conduct." O'Shea v. Yellow Technology Services, Inc., 185 F.3d 1093, 1097 (10th Cir. 1999).  Thus, when a plaintiff produces evidence of both gender-based harassment and gender-neutral harassment, and when a jury, viewing the evidence in context, "reasonably could view *all* of the allegedly harassing conduct . . . as the product of sex and gender hostility," then "it is for the fact finder to decide whether such an inference should be drawn." *Id*. at 1102, 1097.  Viewing the evidence and drawing all reasonable inferences in Cox's favor, the court concludes that a rational jury could not conclude that the alleged gender-neutral conduct, of not saying "hi" or "[c]hecking in on" the NHA team, was a product of gender hostility.

"To prove severity or pervasiveness, a plaintiff must subjectively and objectively perceive the harassment."  Ford, 45 F.4[th] at 1227.  "This means the plaintiff must: (1) subjectively perceive 'the conduct to be severe or pervasive,' and (2) 'show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult.'"  *Id*. (quoting Throupe, 988 F.3d at 1252).  Severity and pervasiveness are analyzed by looking at the totality of the circumstances and considering "'such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  *Id*. (quoting Morris v. City of Colo. Springs, 666 F.3d 654, 664 (10th Cir. 2012)).  "A few isolated incidents of discriminatory conduct and run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces are insufficient to support a claim for hostile work environment."  *Id*. (quotations marks and citations omitted).  Whether the alleged harassing conduct was severe or pervasive is typically a question for the jury, but if the plaintiff fails

to make this showing, summary judgment is appropriate.  *See*, Throupe, 988 F.3d at 1252.

Viewing the evidence and drawing all reasonable inferences in a light most favorable to Cox, the court concludes that the alleged harassing conduct of Jester was neither severe nor pervasive.  None of the identified conduct rises to the level of severity required for a hostile work environment claim.  *See*, *e.g.*, Morris, 666 F.3d at 667 (describing instances where the Tenth Circuit has found the severity element met, including assault and the physical groping of body parts).  And the court concludes that no reasonable employee would have perceived Jester's conduct, viewed in the aggregate, as pervasive.

Although the court does not condone the alleged harassing conduct of Jester, "Title VII does not establish 'a general civility code.'"  Morris, 666 F.3d at 663 (quoting Oncale, 523 U.S. at 81.  Here, on the record before the court, viewed in Cox's favor, the court concludes that Cox has failed to proffer evidence sufficient to raise a genuine issue of material fact that her "workplace [was] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment."  *Id*. at 78.  Thus, the court concludes that CACI is entitled to summary judgment on Cox's Title VII and OADA hostile work environment claims.

Overtime Pay[6]

The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one

---

[6] In the amended complaint, Cox asserts that she seeks relief under the Oklahoma Minimum Wage Act (OMWA), 40 O.S. § 197.1, *et seq*.  However, none of the counts of the amended pleading seeks relief under the OMWA.  Count III only sets forth allegations of a violation of the FLSA. The court concludes that Cox is not pursuing an overtime pay claim under the OMWA.

and one-half times the regular rate at which [she] is employed." 29 U.S.C. § 207(a)(1). "To succeed on an FLSA claim for unpaid overtime, the plaintiff has the burden of proving that [she] performed work for which [she] was not properly compensated." Brown v. ScriptPro, LLC, 700 F.3d 1222, 1230 (10th Cir. 2012). Cox has the burden to produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id*. At summary judgment, Cox must set forth specific facts showing that there is a genuine issue for trial." *Id*.

Upon review, the court finds that Cox has failed to proffer testimony and supporting evidence adequate to show the amount of overtime worked by a just and reasonable inference. Cox testified in deposition that she had "absolutely no idea" what overtime she worked each week for which she was not compensated. *See*, doc. no. 121-31, ECF p. 44, ll. 16-23. All she knows is that she worked "a lot of overtime" and "worked through lunch most days." And "several times" Estes "contacted [her] after work." *See*, *id*., ECF p. 45, ll. 2-4. The only evidence supporting her claim is her testimony. Cox has proffered no evidence to show the hours worked that were not compensated. She testified that she did not have the documents. *See, id*., ECF p. 53, ll. 7-12. The court concludes that the evidence in the record is insufficient to allow the court (or a rational jury) to reasonably infer the amount or the extent of hours Cox worked in excess of 40 hours in a workweek without proper compensation from CACI.

The court finds that Cox has failed to set forth specific facts showing that there is a genuine issue of material fact for trial with respect to her FLSA claim. Consequently, the court concludes that CACI is entitled to summary judgment on Cox's FLSA overtime pay claim.

Discovery

In briefing, Cox complains that she has been unable to state her case more forcibly due to CACI's unilateral constraints on discovery. Specifically, Cox asserts

that she requested Skype messages, which CACI denied having, although examples of Skype messages exist in the summary judgment record.   Additionally, Cox asserts that she received limited emails from CACI, because of its filtered keyword search, and the emails she did receive did not contain the entire email strings.  Cox believes the missing emails would have supported her claims.

To the extent that Cox believed she did not have an opportunity to discover necessary evidence to support her claims, Rule 56(d), Fed. R. Civ. P., provided her a remedy.  Rule 56(d) authorizes the court to (1) defer considering a motion for summary judgment or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  However, Cox has never invoked Rule 56(d).  And neither she nor her counsel has submitted any affidavit or declaration in compliance with Rule 56(d).  Thus, the court finds no justification for granting Cox any relief under Rule 56(d), including deferral or denial of CACI's summary judgment motion because of the referenced discovery issue.

Conclusion

For the reasons stated, CACI, Inc. – Federal's Motion for Summary Judgment as to Claims by Plaintiff Kimberly Cox (doc. no. 120) is **GRANTED**.

DATED this 23rd day of October, 2023.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

21-0501p054.docx